IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYKO GLOBAL, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>OMKAR BHONGIR,<br><br>　　　　Defendant. | Case No. 20-cv-04136-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** |

Before the Court is defendant Omkar Bhongir's ("Bhongir") Motion, filed August 27, 2020, "to Dismiss First Amended Complaint." Plaintiffs Kyko Global, Inc. and Kyko Global GmbH (collectively, "Kyko") have filed opposition, to which Bhongir has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In the First Amended Complaint ("FAC"), Kyko alleges that, from 2005 to 2009, Bhongir "served as a Director" of Prithvi Information Solutions Ltd. ("Prithvi"). (See FAC ¶¶ 12, 21.) According to Kyko, "Bhongir, along with other Prithvi executives and directors, created fake and phony accounts receivable on Prithvi's books and records,"[2] which "fake and phony accounts receivable" Kyko refers to as the "Five Fake Customers"

---

[1] By order filed September 25, 2020, the Court took the matter under submission.

[2] Kyko alleges, in the alternative, that Bhongir (1) "provided assistance" to others who created the assertedly fake and phony accounts receivable, (2) "knew of their existence and failed to prevent them from being disseminated," or (3) "failed to discover their existence before they were disseminated." (See FAC ¶¶ 35-37.)

and "Additional Fake Customers." (See FAC ¶¶ 31, 32, 34.)[3] Subsequently, on a date not disclosed in the FAC, but after Bhongir was no longer a Director, Prithvi allegedly "transmitted the Five Fake Customers to induce Kyko to enter into a loan factoring agreement" (see FAC ¶ 52), and, in November 2011, Kyko, believing the Five Fake Customers "to actually be legitimate," entered into the agreement (see FAC ¶¶ 54, 134).[4]

Kyko alleges that, although payments to Kyko were initially made, "the Five Fake Customers subsequently stopped making payment under the Factoring Agreement." (See FAC ¶¶ 56-57.) Kyko further alleges that, "[t]o continue its ruse, Prithvi supplied Kyko with the Additional Fake Customers with the intent to not have Kyko declare a default." (See FAC ¶ 58.) According to Kyko, it "discovered" the "scheme" in March 2013 (see FAC ¶ 60, 62), and, in June 2013, filed in the Western District of Washington a lawsuit against Prithvi and "others," although not Bhongir, and obtained a judgment in the amount of $134,318,640 plus interest (see FAC ¶¶ 63, 70, 72).

In the instant action, initially filed February 14, 2017, in the Western District of Pennsylvania, Kyko asserts against Bhongir nine Counts, titled, respectively, "Fraud," "Fraudulent Concealment," "Fraud by Omission," "Aiding and Abetting Fraud," "Aiding and Abetting Conversion," "Negligence," "Negligent Misrepresentation," "Breach of Fiduciary Duty," and "Aiding and Abetting Breach of Fiduciary Duty."

**DISCUSSION**

In his motion to dismiss, Bhongir argues that each of the nine Counts is barred by the applicable statute of limitations, and, in the alternative, that Kyko fails to allege

---

[3] Kyko alleges that the names of the "Five Fake Customers" were "chosen to closely resemble legitimate entities conducting business under almost identical names" (see FAC ¶ 33), and that the "Additional Fake Customers" were "other non-existent customers" (see FAC ¶ 34).

[4] Under the agreement, "Prithvi would identify certain of its customer accounts receivable for [its] services and would authorize direct payment on those customer accounts receivable to be made to Kyko in exchange for a portion of the amount outstanding from its customers to be paid immediately by Kyko." (See FAC ¶ 55.) In other words, Prithvi essentially sold the receivables to Kyko at a discount.

2

1   sufficient facts to state a cognizable claim.

2   **A. Statute of Limitations**

3   Bhongir argues that, under California law, each of Kyko's claims is time-barred.

4   At the outset, the Court addresses Kyko's argument that Pennsylvania law applies
5   to Counts VIII and IX, alleging, respectively, "Breach of Fiduciary Duty and "Aiding and
6   Abetting Breach of Fiduciary Duty."[5]  As the Court has diversity jurisdiction over the
7   above-titled action (see FAC ¶¶ 1-3, 6), and as Kyko's initial complaint was transferred
8   from the Western District of Pennsylvania to the Northern District of California for lack of
9   personal jurisdiction (see Order, filed June 15, 2020 (Doc. No. 115-1)), the "substantive
10  law" of California, "including its choice of law rules," applies.  See Nelson v. International
11  Paint Co., 716 F.2d 640, 643 (9th Cir. 1983) (holding, where case is transferred "to cure a
12  lack of personal jurisdiction in the district where the case was first brought," the "laws of
13  the transferee state" apply).  The Court next considers whether, under California's choice
14  of law rules, the California statute of limitations or the Pennsylvania statute of limitations
15  applies to Kyko's breach of fiduciary duty claims.

16  Under California law, where a conflict exists between the laws of two jurisdictions,
17  but only one of those jurisdictions has an interest in having its laws applied to the issue in
18  question, the court applies the law of that jurisdiction.  See id. at 644.  Kyko identifies no
19  conflict between California and Pennsylvania law as to the statute of limitations
20  applicable to breach of fiduciary duty claims.  See Bernhard v. Harrah's Club, 16 Cal. 3d
21  313, 317-18 (1976) (holding party seeking to "invoke the law" of non-forum state has
22  burden to demonstrate other state's law applies).  Even if the laws of the two states differ
23  in some manner, however, "[o]nly California has an interest in having its statute of
24  limitations applied" where, as here, "the forum is in California, and the only defendant is a
25  California resident."  See Nelson, 716 F.2d at 645; (see also FAC ¶ 3 (alleging "Bhongir
26  is a California citizen")).  Consequently, the Court finds California's statute of limitations

27  _____

28  [5] There is no dispute that California law applies to Counts I-VII.

United States District Court
Northern District of California

applies to the breach of fiduciary duty claims.

The Court next considers whether the claims in the FAC are barred by California's statute of limitations.

Under California law, fraud claims are subject to a three-year statute of limitations, see Cal. Civ. Proc. Code § 338(d), conversion claims are subject to a three-year statute of limitations, see Cal. Civ. Proc. Code § 338(c), negligence claims are subject to a two-year statute of limitations, see Cal. Civ. Proc. Code § 335.1, and breach of fiduciary duty claims are subject to a four-year statute of limitations, see Cal. Civ. Proc. Code § 343; Thomson v. Canyon, 198 Cal. App. 4th 594, 606 (2011), with the exception that where a breach of fiduciary claim is based on fraud, it is subject to a three-year statute of limitations, see id. at 607.

Here, each of Kyko's claims is based on the theory that Bhongir is, in some manner, responsible for Kyko's having been fraudulently induced by Prithvi to enter into the factoring agreement, which, as noted, occurred in November 2011. (See FAC ¶ 54.) Bhongir contends Kyko's claims against him accrued in March 2013, the month in which Kyko alleges it learned the "Five Fake Customers" and "Additional Fake Customers" were "bogus and illegitimate." (See FAC ¶ 60.) Kyko contends its claims against Bhongir did not accrue until March 2015, the month in which it alleges "evidence emerged that showed Bhongir's involvement" in the scheme. (See FAC ¶ 71.)

As noted, however, Kyko's initial complaint against Bhongir was filed on February 14, 2017, less than four years after March 2013. Consequently, even under Bhongir's theory of accrual, Kyko's breach of fiduciary duty claims are not time-barred unless those claims are based on fraud. The Court thus turns to the allegations underlying Counts VIII and IX.

Count VIII, by which Kyko asserts a claim that Bhongir allegedly breached his fiduciary duties to Kyko, is based on two different theories: (1) "intentional[ ]" conduct (see FAC ¶ 169), i.e., Bhongir's allegedly having created or assisted others in creating the fictitious accounts receivable, with the intent "to induce lenders to loan money to

Prithvi" (see FAC ¶¶ 31-35); and (2) "negligent[ ]" conduct (see FAC ¶ 169), i.e., Bhongir's alleged "fail[ure] to discover" that others had created fictitious accounts receivable and "fail[ure] to take action to have the [fictitious accounts receivable] withdrawn after they were publicly transmitted and directly transmitted to third-parties" such as Kyko (see FAC ¶¶ 36, 42). Although the first of these two alternatives is, in essence, based on an allegation of fraud, and, consequently, is subject to a three-year statute of limitations, the second pleads a claim of negligence, and, consequently, is subject to a four-year statute of limitations. Count IX, by which Kyko asserts a claim that Bhongir aided and abetted Prithvi in Prithvi's alleged breach of its fiduciary duty to Kyko, is, like the first of the above two alternative claims, based on a theory of fraud, as it is wholly premised on the allegation that Bhongir "assisted" other executives and directors in creating the above-referenced fictitious accounts receivable (see FAC ¶ 177), and, consequently, is subject to a three-year statute of limitations. Accordingly, with the exception of Kyko's claim that Bhongir negligently breached his fiduciary duty, the question remains as to whether Kyko's breach of fiduciary claim and other claims are time-barred.

Under California law, "the statute of limitations begins to run when the plaintiff suspects or should suspect that [its] injury was caused by wrongdoing, that someone has done something wrong to [it]." See Bernson v. Browning-Ferris Industries, 7 Cal. 4th 926, 932 (1994) (internal quotation and citation omitted). "[I]ignorance of the identity of the defendants is not essential to a claim and therefore will not toll the statute." Id. Here, Kyko alleges it knew, in March 2013, it had been injured as a result of its reliance on the "Five Fake Customers" and "Additional Fake Customers," and the claims asserted against Bhongir in the instant action are wholly based on that injury. Under such circumstances, Kyko's claims against Bhongir all accrued in March 2013, and, other than the one claim identified above, are, in the absence of an exception, time-barred.

Relying on a theory of fraudulent concealment, Kyko cites, as one such exception, equitable estoppel. Under California law, "a defendant may be equitably estopped from

asserting the statute of limitations when, as the result of intentional concealment, the plaintiff is unable to discover the defendant's actual identity." See id. at 936.  The rule of equitable estoppel includes, however, "the requirement that the plaintiff exercise reasonable diligence" in attempting to learn the defendant's identity.  See id.  For example, "[w]here the identity of at least one defendant is known, . . . the plaintiff must avail [itself] of the opportunity to file a timely complaint naming Doe defendants and take discovery."  See id. at 937.  Moreover, at the pleading stage, a plaintiff seeking to rely on fraudulent concealment "must plead with particularity the circumstances surrounding the concealment and state facts showing [its] due diligence in trying to uncover the facts."  See Rutledge v. Boston Woven Hose & Rubber Co., 576 F.2d 248, 250 (9th Cir. 1978).

Here, Kyko alleges that, on an undisclosed date, "Bhongir undertook action to hide and conceal his role with the Five Fake Customers and Additional Fake Customers by, without limitation, destroying, removing, and concealing documents" or, "alternatively," that he "directed Prithvi's executives and other directors to destroy evidence and otherwise undertake action to hide and conceal his role with the Five Fake Customers and Additional Fake Customers."  (See FAC ¶¶ 48-49.)  Such allegations are insufficient to plead with particularity the circumstances surrounding the concealment.  See Rutledge, 576 F.2d at 250 (holding a plaintiff "cannot rely upon conclusory statements to avoid the bar of limitations").

As to due diligence, although Kyko alleges it discovered "Bhongir's involvement with the Five Fake Customers and Additional Fake Customers" in "March 2015 when evidence emerged that showed Bhongir's involvement" (see FAC ¶ 71), it fails to allege what facts it uncovered in March 2015, and, more importantly, why it could not have uncovered that information earlier.  Further, in 2013, as noted, Kyko filed a lawsuit against Prithvi and others in the Western District of Washington.  Although Kyko alleges "Bhongir was not made a party to the Washington federal litigation because Kyko believed that the Washington federal court lacked personal jurisdiction over Bhongir" (see FAC ¶ 72), Kyko fails to allege the basis for such belief, nor does it allege why, after

6

1  learning of Bhongir's involvement in the scheme, Kyko waited approximately two years to
2  file the instant action, and, in addition, did so in a district that found it lacked personal
3  jurisdiction over him.
4      Accordingly, other than its claim based on negligent breach of fiduciary duty,
5  Kyko's claims against Bhongir are subject to dismissal as time-barred.

**B. Negligent Breach of Fiduciary Duty**

    As discussed above, the only claim not time-barred is Kyko's claim that Bhongir negligently breached his alleged fiduciary duties to Kyko, specifically, its claim that Bhongir, while a director, "failed to discover" that others had created fictitious accounts receivable (see FAC ¶ 37), and that, following his resignation, he "failed to take action" to have those fictitious accounts "withdrawn" after they were "transmitted" to "third-parties" (see FAC ¶ 41). Bhongir argues that the FAC lacks any facts to support a finding that he owed a fiduciary duty to Kyko.

    In response, Kyko points to its allegations that it is a "creditor" of Prithvi and that Prithvi was "insolvent" when the "Five Fake Customers and Additional Fake Customers" were created, as well as when Kyko entered into the factoring agreement (see FAC ¶¶ 166-67), which allegations, Kyko argues, are sufficient to support a finding that Bhongir owed it a fiduciary duty.

    Under California law, the "general rule" is that a director owes "no duty . . . to creditors." See Berg & Berg Enterprises, LLC v. Boyle, 178 Cal. App. 4th 1020, 1039 (2009).[6] A limited exception to the general rules exists, however, when the corporation is insolvent. Specifically, although "there is no broad, paramount fiduciary duty of care or loyalty that directors of an insolvent corporation owe the corporation's creditors solely because of a state of insolvency," see id. at 1041, directors of an insolvent corporation do owe creditors a fiduciary duty not to engage in "actions that divert, dissipate, or unduly

---

[6] Although, in its FAC, Kyko alleges "the law of Pennsylvania applies" to its breach of fiduciary duty claims (see FAC ¶ 165; see also FAC ¶ 173), Kyko fails to make any argument, or otherwise support such allegation.

7

risk corporate assets that might otherwise be used to pay creditors," such as "acts that involve self-dealing or the preferential treatment of creditors."  See id.

Here, however, Kyko fails to plead any facts to support its conclusory allegation that Prithvi was, at the relevant times, "insolvent" (see FAC ¶ 167); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation and citation omitted), nor has Kyko alleged any facts from which it can be inferred that Bhongir was involved in self-dealing, or that his alleged failures to act involved the diversion or dissipation of corporate assets.

Accordingly, to the extent Count VIII is based on a theory of negligence, it is subject to dismissal for failure to allege sufficient facts to state a cognizable claim.

## CONCLUSION

For the reasons stated, Bhongir's motion to dismiss is hereby GRANTED, and the FAC is hereby DISMISSED.  If Kyko wishes to amend to cure the deficiencies identified above, it shall file a Second Amended Complaint no later than October 23, 2020.  In any such amended pleading, however, Kyko shall not add new claims for relief or defendants, unless Kyko first obtains leave of court.  See Fed. R. Civ. P. 15(a)(2).

**IT IS SO ORDERED.**

Dated: September 30, 2020

MAXINE M. CHESNEY
United States District Judge