United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KYKO GLOBAL, INC., et al.,

                Plaintiffs,

      v.

OMKAR BHONGIR,

                Defendant.

Case No.  20-cv-04136-MMC

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS; DISMISSING
SECOND AMENDED COMPLAINT
WITHOUT FURTHER LEAVE TO
AMEND; VACATING HEARING**

Before the Court is defendant Omkar Bhongir's ("Bhongir") Motion, filed November 6, 2020, "to Dismiss Plaintiffs' Second Amended Complaint."  Plaintiffs Kyko Global, Inc. and Kyko Global GmbH (collectively, "Kyko") have filed opposition, to which Bhongir has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for determination on the parties' respective written submissions, VACATES the hearing scheduled for December 18, 2020, and rules as follow.

## BACKGROUND

In the operative complaint, the Second Amended Complaint ("SAC"), Kyko alleges that, from 2005 to 2009, Bhongir "served as a Director" of Prithvi Information Solutions Ltd. ("Prithvi"), an Indian corporation described by Kyko as an "international information technology company."  (See SAC ¶¶ 12, 21.)  According to Kyko, at some point during Bhongir's term as a Director, Bhongir, "along with other Prithvi executives and directors,

created fake and phony accounts receivable on Prithvi's books and records,"[1] which "fake and phony accounts receivable" Kyko refers to as the "Five Fake Customers" and "Additional Fake Customers."  (See SAC ¶¶ 31, 32, 34.)[2]  Subsequently, on a date not disclosed in the SAC, but after Bhongir was no longer a Director, Prithvi allegedly "transmitted the Five Fake Customers to induce Kyko to enter into a loan factoring agreement" (see SAC ¶ 62), and, in November 2011, Kyko, believing the Five Fake Customers "to actually be legitimate," entered into "an accounts receivable factoring agreement with Prithvi" (see SAC ¶¶ 64).[3]

Kyko alleges that, although payments to Kyko were initially made by Prithvi, "the Five Fake Customers subsequently stopped making payment under the Factoring Agreement."  (See SAC ¶¶ 66-57.)  Kyko further alleges that, "[t]o continue its ruse, Prithvi supplied Kyko with the Additional Fake Customers with the intent to not have Kyko declare a default" (see SAC ¶ 68), but Prithvi "continued to fail to make the required payments under the Factoring Agreement" (see SAC ¶ 69).  According to Kyko, it "discovered," in March 2013, "that the Five Fake Customers and Additional Fake Customers were bogus and illegitimate" (see SAC ¶ 70), and, in June 2013, filed in the Western District of Washington a lawsuit against Prithvi and "others," although not Bhongir, and ultimately obtained a judgment in the amount of $134,318,640 plus interest (see SAC ¶¶ 73, 80-81).

---

[1] In the alternative, Kyko alleges that Bhongir (1) "provided assistance" to others who created the assertedly fake and phony accounts receivable, (2) "knew of their existence and failed to prevent them from being disseminated," or (3) "did not know of their existence but failed to discover their existence before they were disseminated." (See SAC ¶¶ 35-37.)

[2] Kyko alleges that the names of the "Five Fake Customers" were "chosen to closely resemble legitimate entities conducting business under almost identical names" (see SAC ¶ 33), and that the "Additional Fake Customers" were "other non-existent customers" (see SAC ¶ 34).

[3] Under the agreement, "Prithvi would identify certain of its customer accounts receivable for [its] services and would authorize direct payment on those customer accounts receivable to be made to Kyko in exchange for a portion of the amount outstanding from its customers to be paid immediately by Kyko."  (See SAC ¶ 65.)

United States District Court
Northern District of California

In the instant action, initially filed February 14, 2017, in the Western District of Pennsylvania, Kyko asserts against Bhongir nine Counts, titled, respectively, "Fraud," "Fraudulent Concealment," "Fraud by Omission," "Aiding and Abetting Fraud," "Aiding and Abetting Conversion," "Negligence," "Negligent Misrepresentation," "Breach of Fiduciary Duty," and "Aiding and Abetting Breach of Fiduciary Duty."

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

//

//

3

**DISCUSSION**

By order filed September 30, 2020 ("September 30 Order"), the Court granted Bhongir's motion to dismiss the First Amended Complaint ("FAC"), which pleading contained the same nine Counts now asserted in the SAC.  In particular, the Court found, with one exception, each of Kyko's Counts was barred by the applicable statute of limitations and that Kyko had failed to plead sufficient facts to support a finding that an exception to the statute of limitations existed.  With respect to the one claim that was not time-barred, the Court found Kyko had failed to plead sufficient facts to support a cognizable claim.  Kyko was afforded leave to amend, and subsequently filed the SAC. By the instant motion, Bhongir argues Kyko has failed to cure the deficiencies identified by the Court in its September 30 Order.

**A. Statute of Limitations**

Under California law, fraud claims are subject to a three-year statute of limitations, see Cal. Civ. Proc. Code § 338(d), conversion claims are subject to a three-year statute of limitations, see Cal. Civ. Proc. Code § 338(c), negligence claims are subject to a two-year statute of limitations, see Cal. Civ. Proc. Code § 335.1, and breach of fiduciary duty claims are subject to a four-year statute of limitations, see Cal. Civ. Proc. Code § 343; Thomson v. Canyon, 198 Cal. App. 4th 594, 606 (2011), with the exception that where a breach of fiduciary claim is based on fraud, it is subject to a three-year statute of limitations, see id. at 607.

In its September 30 Order, the Court found Kyko's claims against Bhongir accrued in March 2013 (see September 30 Order at 5:17-25), and, because the initial complaint was filed February 14, 2017, Kyko's claims, with the exception of a portion of Count VIII, were not filed within the applicable limitations period (see id. at 4:25-5:16, 5:24-26).  As to the claims not filed within the limitations period, the Court further found that, although Kyko, in an effort to avoid the time bar, sought to rely on a theory of "fraudulent concealment," Kyko failed to allege in the FAC sufficient facts in support thereof.  (See id. at 5:27-7:3.)

United States District Court
Northern District of California

In the SAC, Kyko again relies on a theory of fraudulent concealment (see SAC ¶ 98) and, in support thereof, first raises a theory not set forth in the FAC or in its opposition to Bhongir's motion to dismiss the FAC.  Specifically, Kyko now alleges it "obtained information and documents from a third-party in March 2015 that demonstrated Bhongir's knowledge and involvement in the loan factoring receivable fraud" and "confronted Bhongir with this information," but that Bhongir "denied having any knowledge of the loan factoring receivable fraud" and "denied having any information regarding the loan factoring receivable fraud."  (See SAC ¶¶ 48, 50-52.)  Based on these new allegations, Kyko contends Bhongir is "equitably estopped from raising the statute of limitations as a defense."  (See Pls.' Opp. at 14:4-5.)

The Ninth Circuit has held a plaintiff may base an equitable estoppel theory on a defendant's denial that he engaged in the act of which he is accused.  See Estate of Amaro v. City of Oakland, 653 F.3d 808, 813-15 (9th Cir. 2011) (holding doctrine of equitable estoppel applies "where a plaintiff believes she has a 42 U.S.C. § 1983 claim but is dissuaded from bringing the claim by [the defendant's] affirmative mis-representations" as to "the circumstances of" the incident on which liability is based).[4][5] To succeed on such theory, however, the plaintiff must be "actually and reasonably induced" to "forbear suing within the [limitations] period," see Lantzy, 31 Cal. 4th at 385; in other words, where, as here, the defendant denies engaging in the act of which he is

---

[4] The holding in Amaro is implicitly based on California law.  See Hardin v. Straub, 490 U.S. 536, 539 (1989) (holding "[l]imitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules") (internal quotation and citation omitted).

[5] Although, as Bhongir point outs, the California Supreme Court has held a "defendant's mere denial of legal liability does not set up an estoppel," see Lantzy v. Centex Homes, 31 Cal. 4th 363, 384 (2003) (emphasis in original), here, Kyko alleges Bhongir denied a fact on which Kyko bases its claims, not that Bhongir stated his disagreement with any legal theory on which Kyko relies, see Vu v. Prudential Residential Property & Casualty Ins. Co., 26 Cal. 4th 1142, 1151-52 (2001) (distinguishing cases in which the defendant disagreed with "legal theories supporting the complainant's claims," on which no claim of estoppel can be based, from cases in which the defendant made a "misrepresentation of fact," on which a claim of estoppel can be based).

1   accused, the plaintiff must, at a minimum, "believe the[ ] denials," see Bergstein v.

2   Stroock & Stroock & Lavan LLP, 236 Cal. App. 4th 793, 820 (2015).  In this instance,

3   Kyko has offered, with its opposition, evidence to which no objection has been raised and

4   in which Kyko makes clear it did not believe Bhongir's denial of any knowledge of or

5   participation in Prithvi's fraudulent scheme.  (See Pls.' Opp. Ex D (stating "the comments

6   made in your letter are contrary to the facts we have" and "[w]e view your decision to

7   remain on the Board . . . as condoning the illegal activities of [Prithvi] and therefore

8   making you liable for the losses suffered by [Kyko]").)  Under such circumstances, Kyko

9   cannot establish Bhongir is, as a result of his denials, equitably estopped from relying on

10  the statute of limitations as a defense.  See Bergstein, 236 Cal. App. 4th at 820.

11      Alternatively, Kyko continues to rely on the theory it asserted in the FAC and in its

12  opposition to dismissal of the FAC, specifically, that it is entitled to equitable tolling for the

13  period beginning in March 2013, when it allegedly first learned it had claims against

14  Prithvi, until March 2015, when it allegedly first learned it had claims against Bhongir.  In

15  particular, Kyko alleges, Bhongir, or persons acting on his behalf, "conceal[ed] his role

16  with the Five Fake Customers and Additional Fake Customers."  (See SAC ¶ 59.)  In its

17  September 30 Order, the Court found Kyko's reliance on such theory, as alleged in the

18  FAC, unavailing, for the reason that Kyko failed to "'plead with particularly the

19  circumstances surrounding the concealment'" or to allege "'facts showing [its] due

20  diligence in trying to uncover the facts.'"  (See September 30 Order at 6:7-24 (quoting

21  Rutledge v. Boston Woven Hose & Rubber Co., 576 F.2d 248, 250 (9th Cir. 1978).)

22      For the reasons set forth in its September 30 Order, the Court finds the SAC

23  remains deficient.  First, Kyko again fails to allege with any particularity facts to support

24  its conclusory assertion that Bhongir, or persons on his behalf, "conceal[ed] his role" in

25  the claimed fraud.  (See SAC ¶¶ 59-61.)  Additionally, Kyko again fails to set forth what

26  information it obtained about Bhongir in March 2015 (see SAC ¶ 48), much less to allege

27  any facts to support a finding that it could not have learned such information earlier.

28  //

6

1    Accordingly, with the exception of the one claim discussed below, each of Kyko's

2    claims is barred by the applicable statute of limitations.

3    **B.  Negligent Breach of Fiduciary Duty Claim**

4    Kyko's breach of fiduciary duty claim, asserted in the SAC as Count VIII, is in part

5    based on fraud and in part on negligence.  As explained in the September 30 Order,

6    Count VIII, to the extent based on a theory of negligence, is not barred by the applicable

7    four-year statute of limitations, as Kyko's initial complaint was filed within four years of the

8    date the claim accrued.

9    In support of its claim that Bhongir negligently breached its asserted fiduciary

10   duties, Kyko alleges Bhongir "failed to discover" that other individuals at Prithvi had

11   created false accounts receivable (see SAC ¶ 37), and/or that Bhongir "failed to take

12   action" to have those fictitious accounts "withdrawn" after they were "transmitted" to

13   "third-parties" (see SAC ¶ 41).

14   Under California law, the "general rule" is that a director owes "no duty . . . to

15   creditors."  See Berg & Berg Enterprises, LLC v. Boyle, 178 Cal. App. 4th 1020, 1039

16   (2009).  A limited exception to the general rules exists, specifically, that directors of an

17   "insolvent" corporation owe creditors a fiduciary duty not to engage in "actions that divert,

18   dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors,"

19   such as "acts that involve self-dealing or the preferential treatment of creditors."  See id.

20   at 1041.

21   In its September 30 Order, the Court dismissed the negligent breach claim, as

22   asserted in the FAC, because, inter alia, Kyko failed to allege any facts from which it

23   could be inferred that Bhongir was involved in self-dealing or engaged in some other

24   conduct that would give rise to a fiduciary duty to Kyko.  In the SAC, Kyko has now added

25   the allegations that, "[a]s part of his compensation, Prithvi provided Bhongir equity shares

26   in Prithvi" (see SAC ¶ 184), and that "Bhongir was engaged in self-dealing because his

27   involvement with the Five Fake Customers and Additional Fake Customers . . . artificially

28   inflated the value of Prithvi which in turn artificially inflated the value of Bhongir's equity

United States District Court
Northern District of California

7

1    shares in Prithvi" (see SAC ¶ 185).  Bhongir argues the new allegations in the SAC fail to

2    cure the earlier-identified deficiencies in the claim.  As set forth below, the Court agrees.

3        In arguing its new allegations suffice to support a claim that Bhongir engaged in

4    self-dealing, Kyko relies on In re Brocade Communications Systems, Inc. Derivative

5    Litig., 615 F. Supp. 2d 1018 (N.D. Cal. 2009), in which the district court held that a

6    plaintiff, by alleging facts demonstrating the defendant "received a personal benefit that

7    was not enjoyed by the shareholders generally," could state a claim for "self-dealing."

8    See id. at 1047.  Here, however, even assuming Prithvi's value was increased by

9    Bhongir's "involvement" with the allegedly false accounts receivable (see SAC ¶ 185),

10   such benefit would have been "enjoyed" equally by all shareholders, see Brocade, 615 F.

11   Supp. 2d at 1047.[6]  Moreover, to the extent Kyko relies on Prithvi's allegedly having

12   provided shares to Bhongir as "part of his compensation" (see SAC ¶ 184), such

13   transaction is not, as a matter of law, a "self-dealing transaction."  See Cal. Corp. Code

14   § 5233(a) (providing general definition of "self-dealing transaction"); Cal. Corp. Code

15   § 5233 (b)(1) (exempting from general definition "[a]n action of the board fixing the

16   compensation of a director as a director").

17       Accordingly, to the extent Count VIII is based on a theory of negligence, it is

18   subject to dismissal for failure to allege sufficient facts to state a cognizable claim.

19   **C.  Leave to Amend**

20       As Kyko has not cured the deficiencies previously identified and has not, in its

21   opposition, indicated it could add any factual allegations that would cure those

22   deficiencies or the deficiencies discussed herein, Kyko's claims will be dismissed without

23   further leave to amend.

24   //

25   //

26

27          [6] Kyko does not allege Bhongir sold any shares he may have received, let alone

28   that he did so under circumstances that might suggest self-dealing.

8

**CONCLUSION**

For the reasons stated above, Bhongir's motion to dismiss is hereby GRANTED, and the Second Amended Complaint is hereby DISMISSED without further leave to amend.

**IT IS SO ORDERED.**

Dated: December 11, 2020

MAXINE M. CHESNEY
United States District Judge